MOUNTAIN STATES TELEPHONE & TELEGRAPH COMPANY, A CORPORATION, PLAINTIFF AND APPELLANT, *v.* PUBLIC SERVICE COMMISSION OF MONTANA; PAUL T. SMITH, AUSTIN B. MIDDLETON, ORY J. ARMSTRONG, AS MEMBERS OF AND CONSTITUTING SAID COMMISSION; C. J. HANSEN, SECRETARY-COUNSEL FOR SAID COMMISSION, AND FORREST H. ANDERSON, AS ATTORNEY GENERAL OF THE STATE OF MONTANA AND EX-OFFICIO ATTORNEY FOR SAID COMMISSION, DEFENDANTS AND RESPONDENTS,

INTERNATIONAL UNION OF MINE, MILL AND SMELTER WORKERS AND ITS LOCAL UNIONS IN MONTANA; THE BUTTE MINERS UNION, LOCAL NO. 1; GREAT FALLS MILL AND SMELTERMAN'S UNION, LOCAL NO. 16; PHILIPSBURG MINE AND MILLWORKERS UNION, LOCAL NO. 24; EAST HELENA MILL AND SMELTERMEN'S UNION, LOCAL NO. 72; ANACONDA MILL AND SMELTERMAN'S UNION, LOCAL NO. 117; DEER LODGE MINERS UNION, LOCAL NO. 834; MELROSE MINE, MILL AND SMELTER-WORKERS' UNION, LOCAL NO. 904; C. W. LEAPHART, JR., INDIVIDUALLY; CASCADE COUNTY TRADES AND LABOR ASSEMBLY OF GREAT FALLS, MONTANA; MONTANA FARMERS' UNION; MONTANA STATE A.F.L. AND C.I.O., INTERVENORS AND RESPONDENTS.

No. 9986.
Submitted April 21, 1959. Decided May 11, 1959.
338 Pac. (2d) 1044.

172

Toomey & Hughes, Helena, Akolt, Turnquist, Shepherd & Dick, Denver, Colo., for appellant.

Edmond G. Toomey, Helena, and J. H. Shepherd, Denver, Colo., argued orally.

C. J. Hansen, Helena, for defendants and respondents.

Clinton J. Hansen, argued orally.

C. W. Leaphart, Jr., Helena, Leo C. Graybill, Jr., Great Falls, for intervenors and respondents.

C. W. Leaphart, Jr., Helena, and Leo C. Graybill, Great Falls, for intervenors.

MR. JUSTICE CASTLES:

This is an appeal from an order of the district court which denied a temporary injunction to the appellant staying and suspending the operation of an order of the respondent Public Service Commission, which denied an application for increased telephone rates, and which restrained the respondent Commission from interfering with the collection of the appellant's increased schedule of rates.

For convenience hereafter, the appellant, Telephone Company, will be referred to as the Company. The respondents as the Commission. Intervenors have filed a brief and argued in support of the Commission.

On August 5, 1957, the Company filed with the Commission an application for various increases in rates and charges for intrastate telephone service. The Commission held extended and elaborate hearings on the application and subsequently in its Order No. 2719 denied the application for increased rates on May 7, 1958. After a petition to the Commission for a rehearing, the Commission denied the same on June 4, 1958. It appears from the briefs and arguments of counsel that the Company was afforded a full and fair hearing, and no contention is made that procedural due process was denied. The Commission's result and decision, not its process, is challenged by the Company.

Involved here is the fifth application for higher rates by the

Company since World War II. Previous increases were approved by the Commission in 1948, 1951, 1952 and 1953. Litigation developed over the 1953 Order, culminating in the decision of this court in State ex rel. Olsen v. Public Service Commission, 131 Mont. 272, 309 Pac. (2d) 1035, decided April 16, 1957. The present application followed on August 5, 1957. According to the Company's complaint in the district court, in the application of August 5, 1957, the Company alleged the present schedule of rates, viz., the 1953 rates, had become unjust and unreasonable and therefore unlawful and insufficient to produce the minimum earnings required. The Company further stated in its complaint that ''Although plaintiff's earnings in relation to the value of its properties declined steadily throughout the period of the aforesaid litigation, plaintiff considered it should not attempt further action before the defendant Commission for additional revenue relief until the litigation involving Order No. 2396 was finally terminated.''

On May 26, 1958, the Telephone Company filed its complaint in the district court requesting a judicial review of Commission Order No. 2719, and to present further and additional evidence, and seeking an injunction pendente lite enjoining the Commission from interfering with the collection of a higher schedule of rates it proposed to charge. A show-cause order issued and the Commission appeared in response thereto on June 9th. At that time, the matter of the injunction was submitted on affidavits and arguments of counsel. *The district court denied the Company's petition for an injunction pendente lite. It is from this order that the Telephone Company appeals.* Hereafter the injunction pendente lite will be referred to simply as injunction.

The district court made its Order denying the injunction, and in a memorandum gave its reasons. The court reasoned first, that R.C.M. 1947, section 70-128, while authorizing an injunction against a commission order which increases or decreases rates, does not permit such relief against an order which merely denies an application for an increase; and, second, on the ground that such an injunction cannot be granted

under the court's general equity powers because to do so would change the "status quo" between the parties.

As stated by the Company, the purpose of this appeal is to establish as a matter of law that the district court erred on both grounds; that the order denying the injunction should be reversed; and that the matter should then be remanded to the trial court, for further consideration and the granting of an injunction if the facts shown in the verified complaint and attached affidavit warrant.

The appellant's specifications of error pose the matters in the foregoing paragraph in the following questions:

(1) May a district court order an injunction pendente lite under R.C.M. 1947, section 70-128, where the Commission's order neither increases nor decreases the rates?

(2) Was the district court correct in determining that, in this case as a court of equity, it was without power to grant a temporary injunction under its general equity powers?

(3) Assuming that the district court gave the wrong reasons for its actions, was it nevertheless correct in its results?

This latter question is posed in anticipation of our answers to the first two questions.

We answer both questions in the affirmative. We observe ▆▆▆▆ that both the respondent Commission and the intervenors concede in their briefs that a district court would have power under a proper showing to grant a temporary injunction. The appellant Telephone Company attempts to limit our consideration of this appeal to the reasons stated by the district court for its order. As stated by the appellant, ''The issues in this case are framed by Appellant's Specifications of Error. The ultimate and only question is whether the District Court has authority to grant the relief requested.'' By posing our third question above, we will attempt to dispose of this appeal upon all questions. R.C.M. 1947, section 93-216.

We see no reason to discuss at length whether the district court has jurisdiction to grant injunctive relief under section

70-128 or under its general equity powers. As said before, it is conceded that upon a proper showing such a power exists. Whatever question existed in this matter was removed in 1937 when the Legislature amended the statute, section 70-128, and inserted the injunction provisions as they now exist. Chapter 56, Laws of 1937.

Thus, we conclude that the district court's reason given in its memorandum opinion was wrong as to the first question, but correct in results as to the second question. This being an equity case, R.C.M. 1947, section 93-216 comes into focus. We stated recently in Bradbury v. Nagelhus, 132 Mont. 417, at page 427, 319 Pac. (2d) 503, at page 510:

"This being an action in equity, it is controlled by R.C.M. 1947, section 93-216, which reads in part:

" 'In equity cases * * * the supreme court shall review all questions of fact arising upon the evidence presented in the record * * * and determine the same, as well as questions of law, unless, for good cause, a new trial or the taking of further evidence in the court below be ordered * * *.'

"Appeals in equity require a disposal by this court which will 'put an end to litigation and avoid the necessity of new trials involving expense and the contingencies incident to delay.' [Citing cases.] "

The district court clearly recognized that it would have general equity power to grant an injunction in a proper case. The court after concluding that under section 70-128 an injunction was not proper said in its memorandum:

"But notwithstanding any absence of statutory authority, it must further be determined whether this case is one wherein the primary equitable powers of the court may be invoked. Plaintiff does not seek merely a prohibitory injunction 'staying and suspending the operation of the order of the commission.' The temporary injunction sought by plaintiff is to enjoin the commission during the pendency of this action from interfering with the charging and collecting by plaintiff of the higher rates heretofore rejected by the commission, and to en-

join the commission from imposing any penalties upon plaintiff by reason of placing such higher rates into effect.

"The effect of the requested injunction would be to substitute an entirely different schedule of rates and charges for the presently existing commission-ordered rates. This may not be done by means of a temporary injunction. 'The purpose of an injunction pendente lite is to maintain the status quo until the relative rights of the parties can be determined by a trial on the merits.' (Postal Telegraph-Cable Co. of America v. Nolan, 53 Mont. 129, at 134, 162 Pac. 169.)"

Upon the basis of the foregoing statement in the district court's memorandum, the appellant Company concludes that the district court felt that it did not have general equity power in this type of situation; that is, where the Commission's order neither increased nor decreased existing rates. The Company then proceeds to attack what it calls the status quo doctrine. However, the district court only included *this case.* What then are the moving papers before the court to call into play its general equity power, or any other statutory power for that matter, to order an injunction?

The district court did not have before it the record of the hearings before the Commission. The Company's complaint had annexed three exhibits, A, B, and C.

Exhibit A was a joint affidavit of the Company's Comptroller and Montana Accounting Supervisor, showing the intrastate operating results for the year ending March 31, 1958. According to this exhibit, the Company's actual earnings for that period produced a rate of return of about 4.73 percent on any suggested rate base.

Exhibit B was a detailed statement of the Company's Proposed Rate Schedules. It reflects increases in existing rates which range from 25 to 58 percent on residential service, 15 to 53 percent on business service, and up to 50 percent on long-distance calls. If placed into effect, these rates would provide over $3,000,000 per year in additional revenue from Montana customers.

Exhibit C was a copy of the fifty page Order No. 2719 of the Commission. In this order, the Commission determined a rate base. On this rate base, the Commission found that for the year ending June 30, 1957, the Company's earnings produced a rate of return of 5.56 percent and found this rate to be reasonable.

The Company asserts that the aforementioned Order No. 2719 ignored the Commission's own precedents and the law of this state in determining the rate base, in that it considered matters other than the fair value of the utility's property. Whether or not there is any validity to his contention, we are not called upon to decide, nor was the district court upon an application for an injunction pendente lite.

The Commission filed its own affidavit which reaffirms and ratifies Order No. 2719 and controverts the contents of the Company's affidavit and complaint.

Faced with this showing, the district court denied the application for an injunction, and we believe properly so. Perhaps the district court's memorandum might have been more complete by an additional statement to the effect that the showing required for the exercise of its equity power was not made.

It is a well-established rule in Montana that an application for an injunction pendente lite is addressed to the sound discretion of the trial court, and the exercise of that discretion will not be disturbed on appeal unless there has been a manifest abuse of that discretion. Hansen v. Galiger, 123 Mont. 101, 208 Pac. (2d) 1049; National Bank of Montana v. Bingham, 83 Mont. 21, 269 Pac. 162; Postal Telegraph-Cable Co. v. Nolan, 53 Mont. 129, 162 Pac. 169; Rea Bros. Sheep Co. v. Rudi, 46 Mont. 149, 127 Pac. 85.

It is conceded by respondents and intervenors, as previously stated, that in a proper case the power to grant an injunction exists. This would be true where a utility has been deprived of its basic rights by the clearly illegal acts of the Commission such as where the rate of return as related to the

rate base would result in confiscation of property without due process of law.

There are certain statutory presumptions in favor of any ▮ order of the Commission. R.C.M. 1947, section 70-127, provides in part: "All rates * * * shall be prima facie lawful, from the date of the order until changed or modified by the commission, or in pursuance of the next section."

And, subdivision (6) of section 70-128 provides: "In all actions under this act, the burden of proof shall be upon the party attacking or resisting the order of the commission to show that the order is unlawful or unreasonable, as the case may be."

There must be clear and convincing proof showing manifest error before such presumptions can be overcome. State ex rel. Olsen v. Public Service Commission, 131 Mont. 272, 309 Pac. (2d) 1035; Chicago, M., St. P. & P. Ry. Co. v. Board of Railroad Commissioners, 126 Mont. 568, 255 Pac. (2d) 346; Great Northern Utilities Co. v. Public Service Comm., 88 Mont. 180, 293 Pac. 294; Billings Utility Co. v. Public Service Comm., 62 Mont. 21, 203 Pac. 366.

The Company concedes these rules but asserts that under ▮▮ section 70-128, it nonetheless made a "proper showing" for an injunction pendente lite. It is true that the complaint alleged that the rate of return was unreasonable, unlawful and confiscatory. However, the moving documents for the injunction prayed for, showed at best a conflict of fact between the Company and the Commission on the rate base and on the rate of return. The same documents also showed a conflict between the Commission and the protestants, now intervenors. The bare assertion that the Commission's findings are unreasonable, unlawful and confiscatory will not, without more, be sufficient to invoke the court's jurisdiction for an injunction. Wherein are the rates confiscatory? Does capital impairment exist or seem imminent? Is the Company's financial integrity impaired? We believe for a "proper showing" in such a case as this, that these and other matters are necessary

to invoke the court's powers to establish new and different rates from that found reasonable by the Commission.

In Montana, a party applying for a temporary injunction ██ has the burden of establishing a prima facie right to such relief. Postal Telegraph-Cable Co. of America v. Nolan, supra. Here, appellant has not established such a right. It has not overcome the presumption in favor of the Commission's order. Although the Company's pleadings use the words unreasonable, unlawful and confiscatory as related to its own computation of the rate of return, such bare assertions are not sufficient to establish a prima facie right to such relief. We are not unmindful of the rule that it is not necessary to make out such a case as would entitle him to relief at final hearing as stated in State ex rel. Public Service Comm. v. Marion Circuit Court, 230 Ind. 277, 100 N.E. (2d) 888, 103 N.E. (2d) 214, cited by appellant. However, in view of our statutory presumptions in favor of the Commission's findings and our own case authorities on temporary injunctions, it would require more to establish a "proper showing" in such a case as this.

The appellant, respondents, and intervenors have cited many cases in rate fixing situations from other jurisdictions as to reasonableness of rates, confiscatory nature of rates, requirements for temporary injunctions, and other matters. That there is a conflict of authorities is apparent. We believe that our own statutes and case authorities are sufficient to support the reasoning hereinbefore set forth.

Another matter which we feel merits comment is this. Our entire discussion has assumed that there is no plain, speedy and adequate remedy at law; that the equity power of a court should not be invoked where a litigant has a plain, speedy and adequate remedy at law is a rule which needs no citation. In the early part of this opinion we recited that the Company's complaint stated that from 1953 on, its earnings declined steadily, and then stated that the Company *considered* it should not attempt further action pending the litigation then in progress. Just what prompted this "consideration" is not apparent, but

we are not impressed with the fact that after waiting four years, knowing its revenues were declining, it can now assert its remedy at law was not plain, speedy and adequate. Section 70-128 provides that all actions to review orders of the Commission shall have precedence both in the district court and this court. We do not feel it necessary to make any holding as to this matter but deem it worthy of comment.

For the foregoing reasons the order appealed from is affirmed.

MR. CHIEF JUSTICE HARRISON, and MR. JUSTICES BOTTOMLY, ADAIR, and ANGSTMAN, concur.