STATE OF MONTANA, *ex* REL. ARNOLD H. OLSEN, PLAIN-
TIFF AND APPELLANT, *v.* PUBLIC SERVICE COMMISSION
OF THE STATE OF MONTANA, ET AL., DEFENDANTS AND RE-
SPONDENTS, AND THE MOUNTAIN STATES TELEPHONE
& TELEGRAPH COMPANY, DEFENDANT AND RESPONDENT.

No. 9677.

Submitted January 18, 1957.   Decided April 16, 1957.

309 Pac. (2d) 1035.

Mr. Arnold H. Olsen, Atty. Gen., pro se, amicus curiae.

Mr. Charles W. Leapheart, Spec. Asst. Atty. Gen., Mr. Lyman J. Hall, Asst. Atty. Gen., for appellant.

Messrs. Loble & Loble and Mr. Gene Picotte, Helena, Mr. J. H. Shepherd, Denver, Colorado, for respondent Mt. States Tel. & Tel. Co.

Mr. James B. Patten, Helena, Mr. John V. Potter, Jr., Sec'y. Counsel, Bd. of Ry. Comm., for respondent Railroad Commission.

Mr. Olsen, Mr. Leapheart, Mr. Henry Loble, Mr. Shepherd and Mr. Patten argued orally.

MR. JUSTICE CASTLES:

This case involves an appeal in accordance with the provisions of R.C.M. 1947, section 70-128. It is from an order of the defendant, Public Service Commission of Montana (hereinafter called Commission), granting to the Mountain States Telephone and Telegraph Company (hereinafter called Company), an in-

crease in the rates and charges to the company's intrastate telephone users in the State of Montana. This appeal is brought by the attorney general of the State of Montana, the relator, on behalf of the State of Montana.

On March 23, 1953, the Company filed with the Commission an application requesting an increase in rates and charges for service rendered by it within the State of Montana. Hearings on said application, after notice had been given, commenced on May 18, 1953, and continued until May 21, 1953. On August 7, 1953, the Commission by its Order No. 2396, granted the Company an increase in rates effective September 1, 1953, but denied a part of the rate increase sought by the Company.

After its petition for rehearing and reconsideration was denied, the plaintiff filed its complaint on November 5, 1953.

The matter came on for trial on its merits on August 23, 1955. The defendant Company filed a cross complaint to which the plaintiff interposed an answer, and the trial on the cross complaint was also held on August 23, 1955. The court entered its judgment in favor of the defendants on the plaintiff's cause of action and dismissed the cross complaint of the defendant Company on November 21, 1955. Judgment was entered on November 22, 1955, affirming the order of the Commission. It is from such judgment that this appeal is taken.

The appellant, State of Montana, assigns four specifications of error:

"I. The District Court erred in entering judgment for the defendants and finding Order No. 2396 to be reasonable and lawful.

"II. The District Court erred in entering judgment against plaintiff on its cause of action and finding that Order No. 2396 was supported by substantial and sufficient evidence.

"III. The lower court erred in entering judgment for defendant against the plaintiff based on inadequate and insufficient findings of fact.

"IV. The lower Court erred in overruling the plaintiff's affirmative defense to the defendant company's cross complaint

and then entering judgment against the plaintiff on its action against both defendants.''

The cross-appellant Company assigns two specifications of error:

"I. The Court erred in ordering that the Defendant, Respondent and Cross-Appellant, the Mountain States Telephone and Telegraph Company, take nothing by its cross complaint, and that said cross complaint be dismissed.

"II. The Court erred in failing to find that the Defendant Commission in its Order No. 2396 should have granted to the Defendant Company further and additional annual gross revenues over and above the sum of $1,288,300, or an increase in annual net operating earnings after taxes in a sum in excess of $595,400.''

The order of the Commission dated August 7, 1953, granted the Company the right to collect increased rates in the gross amount before taxes of $1,288,300 annually. After taxes the net increased earnings to the Company were $595,400.

The order found that the average fair value of the company's property devoted to intrastate telephone service for the year 1953 was $29,680,000. It set a rate of return of 5.8 per cent of the average fair value as a fair and reasonable rate.

The appellant, State of Montana, asserts that the net increase of $595,400 was unreasonable, unlawful and not supported by substantial and sufficient evidence. The respondent and cross-appellant Company asserts that the evidence offered the respondent Commission and the trial court should have resulted in a larger increase in rates.

It is noted that over fifty per cent of the rate increase revenue must be paid the government in taxes.

All parties agree that a full and complete hearing before the Commission was had and that the requirements of due process were complied with. Full and complete opportunity for protests and cross-examination of all the witnesses was afforded.

As to the appellant's assigned errors, two main questions appear:

(1) What method or methods must the Commission use to establish a rate base or need it establish one at all?

(2) Was there substantial evidence before the Commission supporting the order entered by the Commission granting the Company a part of the relief applied for?

That the Commission has the delegated authority to fix rates █ is beyond dispute. Billings Utility Co. v. Public Service Comm., 62 Mont. 21, 203 Pac. 366; Great Northern Utilities Co. v. Public Service Comm., 88 Mont. 180, 293, Pac. 294; City of Billings v. Public Service Comm., 67 Mont. 29, 214 Pac. 608; State ex rel. City of Billings v. Billings Gas Co., 55 Mont. 102, 173 Pac. 799.

In R.C.M. 1947, section 70-105, the Legislature set up the general standards for utility rates when it stated that utility charges must be just and reasonable.

In R.C.M. 1947, section 70-106, the Legislature provided for valuation of utility property as follows:

"The commission may, in its discretion, investigate and ascertain the value of the property of every public utility actually used and useful for the convenience of the public. In making such investigation the commission may avail itself of all information contained in the assessment rolls of various counties, and the public records of the various branches of the state government, or any other information obtainable, and the commission may at any time on its own initiative make a revaluation of such property."

The language of the statute is clear that the Commission █ shall determine *"the value of the property of every public utility actually used and useful for the convenience of the public."* This court has previously determined that this means the present fair value of the utility's property. Tobacco River Power Co. v. Public Service Comm., 109 Mont. 521, 98 Pac. (2d) 886. Neither the Public Service Commission nor the utility company is limited to nor bound by any particular method in arriving at the solution of the question of value. Tobacco River Power Co. case, supra.

"The cost of reproduction new, less depreciation, is usually regarded as one of the most important, if not the dominant, factor, in the determination of value. 51 C.J. 17. Under the section of the Montana Code just cited, assessment rolls are likewise admissible as evidence of value, but of course are not exclusive. When the state condemns property of a landowner it frequently resorts to assessed valuations as evidence, but more often than not the jury will determine damages and valuation in excess of that set out in the assessment rolls. Original cost, assessment values, cost of reproduction new, prudent investment theory, public records mentioned in section 3884 [Revised Codes of 1935, now R.C.M. 1947, section 70-106], supra, and opinions, of value are all means to an end, namely the determination of value. We can find no error in the procedure of the court in allowing evidence of cost of reproduction new, less depreciation, to be admitted as evidence of value." Tobacco River Power Co. v. Public Service Comm., 109 Mont. 521, 529, 530, 98 Pac. (2d) 886, 890, supra.

The decision of this court in the Tobacco River Power Co. case, definitely established the law in this state as to the valuation of utility property for rate making purposes. We hold that it is still the law.

Appellant's contention, that the Commission relied on only one sentence of the Tobacco River Power Co. case, that "the cost of reproduction new, less depreciation, is usually regarded as one of the most important, if not the dominant factor, in the determination of value" cannot be reconciled with the following statement made by the Commission in its order, wherein it indicated the degree of reliance on the Tobacco River Power Co. case:

"In arriving at its decision here, the Commission has gone into all the methods of valuation presented to it; reproduction cost new, less depreciation; original cost; original cost depreciated; and the assessment values of the Company's Montana properties devoted to the service involved in this rate matter.

"Further, the Commission has never been directed by either

statute or judicial decision to consider only certain elements in arriving at a conclusion in a rate making matter. It has been allowed a wide discretion, as it necessarily should have to properly perform the duties which the legislature saw fit to delegate to it.''

That the Commission exercised its discretion is reflected by its finding No. 10, where it finds the average fair value for the year 1953 of $29,680,000, a figure between the upper extreme claimed by the Company of $33,550,000 and $21,979,000 advocated by protestants.

Appellant's contentions that the Federal Power Commission v. Hope Natural Gas Co., 320 U.S. 591, 64 S. Ct. 281, 88 L. Ed. 333, changed the law in Montana has no merit. The Commission in this case has followed the Montana statute and the rulings of this court. While our statute does not establish a formula for arriving at fair value, it does require such value to be found and used as the base in fixing rates. The reasonableness and justness of the rates must be related to this finding of fair value.

This court in the Great Northern U. Co. v. Public Service Comm., 88 Mont. 180, 218, 293 Pac. 294, 303, stated as follows:

''Any order made by the commission must be just and reasonable. What is a reasonable charge, or a just and reasonable order, must depend upon the facts in each case. What a utility is entitled to demand in order that it may have just compensation is a fair return upon the reasonable value of the property at the time it is being used for the public (Minn. Rate Cases, 230 U.S. 352, 33 S. Ct. 729, 57 L. Ed. 1511, Smyth v. Ames, 169 U.S. 466, 18 S. Ct. 418, 42 L. Ed. 819, Willcox v. Consolidated Gas Co., 212 U.S. 19, 29 S. Ct. 192, 53 L. Ed. 382); and this should include sufficient to enable the utility out of such revenue to keep in reasonable repair its equipment so as to render reasonable service.''

The Commission received evidence on, and gave consideration to all of the several possibilities going into, the establishment of their final valuation figure.

The trend, of all judicial utterances examined even in states ▮ in which the statute does not require value to be considered as a factor as Montana does, is to permit the commissions to exercise their discretion in establishing a proper rate base, and so long as there is evidence to support the rate base finding, the courts will not interfere.

After fixing the rate base, the Commission found that a rate of return of 5.8 per cent would be sufficient. Three qualified witnesses testified, and their testimony was uncontroverted; that a rate of return of not less than 6 per cent was necessary, and that a rate of return of 6½-7 per cent would be reasonable.

The same results as to gross return to the Company might have been attained by the Commission if they had used a higher rate of return, such as the 6½ per cent rate found reasonable in the Hope case, so strongly relied upon by relator, and applied it to a lower rate base figure. This higher rate is the only rate appearing in the uncontroverted evidence of the Company as being fair and reasonable. However, what has been said as to the Commission's discretion in fixing the rate base also goes to the rate of return. The rate of return fixed on the rate base was found by the Commission and the district court as reasonable and just in relation to each other.

Appellant urges that the Commission did not have substantial evidence to support its findings and order in that "the whole of the evidence placed in the record before this Court and the Commission is based on the Company's intrastate allocation." And further that the intrastate allocation was "unfair and discriminates against the intrastate customer."

The Company's operation is both interstate and intrastate. ▮ A method of separating the properties, revenues and expenses between the systems was used; that method being the uniform separations method prescribed by the joint action of the National Association of Railroad and Utilities Commissioners and the Federal Communications Commission. The Montana Commission is a member of the National Association and participated in the preparation of the system. We see nothing

wrong with this uniform system and while there may be imperfections in the system, until some alternative method is shown which will produce better results we see no error. The appellant is not in position to complain about the use of such a system without some showing of its inadequacy or offering some evidence supporting an alternative method. The independent auditor investigating for the Commission found that the Company complied with the uniform method in its procedure.

The action was brought under R.C.M. 1947, section 70-128. Subdivision (6) of this section provides:

"In all actions under this act, the burden of proof shall be upon the party attacking or resisting the order of the commission to show that the order is unlawful or unreasonable, as the case may be." R.C.M. 1947, section 70-128.

He who would upset the rate order under the act, Natural Gas Act, 15 U.S.C.A., section 717, carries the heavy burden of making a convincing showing that it is invalid because it is unjust and unreasonable in its consequences. Federal Power Comm. v. Hope Natural Gas Co., supra.

A reading of the transcript and the order of the Commission demonstrates that there was substantial evidence to support its findings. The Commission's Order No. 2396 shows that the Commission reviewed the history of the Company, its revenues, expenses, taxes and earnings for the years 1952 and 1953 from evidence given by the Company as well as other parties, and the authorities relied upon before coming to its conclusion.

The appellant has failed to make any showing that the Commission's order is unjust, unreasonable and unlawful in its consequences. The appellant failed to carry the burden of presenting proof sufficient to overcome the presumption that the Commission's order is reasonable and lawful. The district court had before it the same issues and the same objections as appellant now advances in this court. This court must and does rely largely on a first reviewing court's decision. Radio Corp. of America v. United States, 341 U.S. 412, 71 S. Ct. 806, 95 L. Ed. 1062, at page 1068. If the court, after review, finds the

Commission's order and the findings therein are supported by evidence and credible proof, the court must approve the action of the trial court in affirming the order. Billings Utility Co. v. Public Service Comm., 62 Mont. 21, 203 Pac. 366; Great Northern U. Co. v. Public Service Comm., 88 Mont. 180, 293 Pac. 294; Fulmer v. Board of Railroad Com'rs, 96 Mont. 22, 28 Pac. (2d) 849; State ex rel. Peterson v. District Court, 107 Mont. 482, 86 Pac. (2d) 403; Chicago, M., St. P. & P. R. Co. v. Board of Railroad Commissioners, 126 Mont. 568, 255 Pac. (2d) 346; Montana Citizens Freight Rate Ass'n v. Board of Railroad Commissioners, 128 Mont. 127, 271, Pac. (2d) 1024.

The appellant, relying on R.C.M. 1947, section 70-106, contends that it was incumbent upon the Commission to make an investigation of its own before authorizing an increase in rates. The record shows that the Commission hired a certified public accountant to investigate and audit the Company's books. His report advised the Commission that the financial exhibits of the company were accurate and truthful. Appellant does not indicate just how far such an investigation should go. This court feels that section 70-106 is permissive only. It gives the Board authority in its discretion at any time and of its own initiative to make a revaluation of the property of any public utility. It need not do so if satisfied with the proof submitted to it.

Appellant's fourth specification of error that it was improper for the lower court to allow the defendant Company to file its cross complaint and the Company's two specifications of error to the effect that the Commission should have granted additional annual gross revenues will be treated together. The district court ordered that the Company take nothing by its cross complaint, and that said cross complaint be dismissed. For the same reason previously stated as to the validity of Order No. 2396, of Docket 4064 of the respondent Commission, the dismissal of the cross complaint by the district court was proper. We do not feel it necessary to rule on appellant's fourth specification of error.

Many of the same questions presented in this case are also in State ex rel. Olsen v. Public Service Commission, Mont. 1957, 308 Pac. (2d) 633. Much that was said in that case as to the duty of the court in rate cases is applicable here and need not be repeated.

Where, as herein previously stated, the Commission has made ■ its own investigation and exercised its own discretion in arriving at the rate base and the rates, under its delegated authority, the function of the judiciary is to give effect to the legal acts of the other two departments of government, not to supervise them. . Myrick v. Peet, 56 Mont. 13, 180 Pac. 574; Arps v. State Highway Commission, 90 Mont. 152, 171, 300 Pac. 549.

The decision of the district court is affirmed.

MR. CHIEF JUSTICE HARRISON, concurs.

MR. JUSTICES BOTTOMLY and ADAIR, dissenting.

We dissent. Our grounds are the same as stated in our dissent in State ex rel. Olsen v. Public Service Commission, Appeal No. 9676, a companion case, Mont. 1957, 308 Pac. (2d) 633.

MR. JUSTICE ANGSTMAN (specially concurring).

On the record I must concur in the opinion of Mr. Justice Castles.

Had I any doubt about the matter I would prefer to condemn the increased rate.

I cannot however subscribe to the unheard of dictrine announced in the minority opinion. According to that view the attorney general should prevail because his client failed to find evidence somewhere, which he himself was unable to produce, that would tend to defeat the application for increased rates.

That view is contrary to all the cases throughout the country. The rule is that if the Commission's order is sustained by substantial evidence, the courts will sustain it. 43 Am. Jur., Public Utilities and Services, section 227, page 724; Interstate Commerce Comm. v. Union Pac. Ry. Co., 222 U.S. 541, 32 S. Ct. 108,

56 L. Ed. 308. That has been the settled rule in Montana. Billings Utility Co. v. Public Service Comm., 62 Mont. 21, 203 Pac. 366; Great Northern Utilities Co. v. Public Service Comm., 88 Mont. 180, 293 Pac. 294; Fulmer v. Board of Railroad Com'rs, 96 Mont. 22, 28 Pac. (2d) 849; Chicago M., St. P. & P. Ry. Co. v. Board of Railroad Com'rs, 126 Mont. 568, 255 Pac. (2d) 346.

Here, no member of this court questions the fact that the order of the Commission is supported by substantial evidence. The fact is there is no evidence to the contrary. Such being the case I find that what we said in the companion case of State ex rel. Olsen v. Public Service Commission, being case No. 9676, Mont., 308 Pac. (2d) 633, 635, must control my action here.

In that case we said:

"At the outset, we point out that in determining the questions before the court neither the trial judge nor the members of this court can discharge their duty by merely voting on whether they as individuals prefer the old or the new rate. They do not make a choice to either stand with the people or with the power company.

"The action of the courts must be governed by recognized principles of law as applied to the facts, and this court must render its decision in writing stating the grounds of the decision. R.C.M. 1947, section 93-212.

"We mention these matters simply to indicate that we agree with the Board when it said, 'a popular decision would be to deny any increase, but popular political decisions cannot be considered'."